[942 NYS2d 551]

Leigh Sharabani, Appellant, v Simon Property Group, Inc., et al., Respondents.

Second Department, April 17, 2012

APPEARANCES OF COUNSEL

*Irwin Popkin*, Melville (*Leland L. Greene* of counsel), for appellant.

*Sills Cummis & Gross P.C.*, New York City (*Jeffrey J. Greenbaum* and *Charles J. Falletta* of counsel), for respondents.

## OPINION OF THE COURT

COHEN, J.

This appeal requires us to examine the extent to which federal laws and regulations governing national savings associations preempt New York State laws as they may relate to "electronic stored value systems," commonly known as gift cards, specifically, whether federal laws and regulations preempt New York State contract law and statutes such as General Business Law § 349. This Court previously has addressed federal preemption issues involving gift cards sold through agreements with federally chartered national banks (*see Goldman v Simon Prop. Group, Inc.*, 31 AD3d 382 [2006]; *see also Goldman v Simon Prop. Group, Inc.*, 58 AD3d 208 [2008]; *Lonner v Simon Prop. Group, Inc.*, 57 AD3d 100 [2008]; *Lonner v Simon Prop. Group, Inc.*, 31 AD3d 398 [2006]). As in our prior decisions, the scope of preemption depends upon the extent to which state law imposes substantive limitations on the authorized activities of the federal financial institution.

### Factual and Procedural Background

It is alleged in the instant action that, in May 2007, the infant plaintiff (hereinafter the plaintiff) received a gift card for her birthday, which was issued by the defendant MetaBank and marketed and promoted by the defendant Simon Property Group, Inc. (hereinafter Simon). The gift card had an initial balance of $40 and an expiration date of April 2009. The plaintiff used the gift card to make purchases in January 2008 and January 2009, leaving an available balance of $17.71. On or about July 22, 2009, the plaintiff attempted to make a purchase using the gift card, but she was advised that a $15 renewal fee would

be assessed, leaving an available balance of $2.71, which would have been insufficient to pay for her intended purchase. The plaintiff did not renew the gift card.

## The Complaint and Amended Complaint

The plaintiff commenced this action, on behalf of herself and others similarly situated, against Simon, alleging five causes of action. Simon, joined by proposed intervenor MetaBank, moved to dismiss the plaintiff's original complaint. In lieu of responding to Simon's motion to dismiss the complaint, the plaintiff served and filed an amended complaint, joining MetaBank as a party,[1] and alleging six causes of action on behalf of herself and others similarly situated. The first cause of action sought to permanently enjoin the defendants from charging a renewal fee on expired gift cards. The second cause of action alleged a violation of the obligation of good faith and fair dealing. The third cause of action sounded in breach of contract, alleging that the defendants failed to "handle" the unused balance "according to applicable law," as set forth in the terms and conditions in the literature accompanying the card. The fourth cause of action alleged deceptive, misleading, and fraudulent conduct in willful and knowing violation of General Business Law § 349 (a) that would subject the defendants to liability in accordance with General Business Law § 349 (h). The remaining causes of action sought damages for money had and received, conversion, and unjust enrichment.

## The "Applicable Law"

The amended complaint alleged that the literature accompanying the gift card purchased for the plaintiff recited that, upon expiration, the gift card would be closed and any unused balance "will be handled according to applicable law." The literature further provided a phone number through which one may request a new gift card containing the remaining balance, minus an "Expired Card Fee." Citing sections 1415 and 1422 of the Abandoned Property Law, the amended complaint alleged that, under the "applicable law," the plaintiff was entitled to the return of the unused balance upon expiration, without payment of any fee. Thus, the amended complaint alleged that the defendants breached the underlying contract of sale of the gift card by failing to handle the unused balance ac-

---

1. By stipulation dated January 4, 2010, Simon and MetaBank withdrew their motion to dismiss the initial complaint, without prejudice.

cording to applicable law, converted the unused funds, and were unjustly enriched by their retention of those funds. The amended complaint also alleged that the defendants deceptively and fraudulently represented that the only option to gain access to the unused balance upon expiration was to pay a fee and renew the gift card, when the defendants knew that, under the applicable law, the plaintiff was entitled to the return of the funds. The amended complaint further alleged that the defendants failed to advise the plaintiff and other members of the class of the right to claim the unused balance in accordance with applicable law.

### The Motion to Dismiss the Amended Complaint

The defendants moved to dismiss the amended complaint pursuant to CPLR 3211 (a) (1), (2), and (7), or for summary judgment dismissing the amended complaint, arguing, inter alia, that the plaintiff's claims were preempted by the federal Home Owners' Loan Act of 1933 (12 USC §§ 1461-1468) and its implementing regulations, promulgated by the Office of Thrift Supervision (hereinafter the OTS) of the United States Department of the Treasury (12 CFR 7.4000-7.5010, hereinafter the OTS regulations). In an order entered July 20, 2010, the Supreme Court granted that branch of the motion which was pursuant to CPLR 3211 (a) (2) to dismiss the amended complaint, concluding that all of the plaintiff's causes of action were preempted by federal law. Consequently, the Supreme Court did not address the other branches of the defendants' motion. The plaintiff appeals. We modify the order, deny those branches of the defendants' motion which were pursuant to CPLR 3211 (a) (2) to dismiss, as preempted by federal law, the first, second, fourth, fifth and sixth causes of action in the amended complaint and so much of the third cause of action in the amended complaint as was not premised on the Abandoned Property Law, and remit the matter to the Supreme Court, Nassau County, for a determination on the merits of those branches of the defendants' motion which were pursuant to CPLR 3211 (a) (1) and (7) to dismiss those causes of action or for summary judgment dismissing those causes of action.

### Federal Preemption Doctrine

The federal preemption doctrine has its roots in the Supremacy Clause of the United States Constitution, which declares that the laws of the United States made in pursuance of the

Constitution "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding" (US Const, art VI, cl 2). Under the doctrine of federal preemption, Congress may preempt state laws, either expressly or impliedly (see *Jones v Rath Packing Co.*, 430 US 519, 525 [1977]). In every inquiry into the scope of a statute's preemptive effect, the intent and purpose of congressional legislation is the ultimate touchstone (see *Altria Group, Inc. v Good*, 555 US 70, 76; *People v First Am. Corp.*, 18 NY3d 173 [2011]).

Federal preemption of state laws generally can occur in three ways: "where Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law" (*Wachovia Bank, N.A. v Burke*, 414 F3d 305, 313 [2005], *cert denied* 550 US 913 [2007]; see *Barnett Bank of Marion Cty., N. A. v Nelson*, 517 US 25, 31 [1996]). A state law conflicts with federal law where "compliance with both federal and state regulations is a physical impossibility" (*Florida Lime & Avocado Growers, Inc. v Paul*, 373 US 132, 142-143 [1963]), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Hines v Davidowitz*, 312 US 52, 67 [1941]). A federal agency acting within the scope of its congressionally delegated authority may preempt state regulation (see *Louisiana Pub. Serv. Comm'n v FCC*, 476 US 355, 369 [1986]). Federal regulations have the same preemptive effect as federal statutes (see *Fidelity Fed. Sav. & Loan Assn. v De la Cuesta*, 458 US 141, 153 [1982]).

## Home Owners' Loan Act and Office of Thrift Supervision Regulations

Pursuant to its powers under the Commerce Clause (see US Const, art I, § 8, cl 3), Congress passed the Home Owners' Loan Act of 1933 (hereinafter HOLA). The purpose of HOLA was to prevent foreclosures by refinancing home mortgages currently in default. HOLA confers lending and investment powers upon federal savings associations or thrifts, "to encourage such institutions to provide credit for housing safely and soundly" (12 USC § 1464 [a]). In 1989, in response to the then-existing savings and loan crisis, Congress amended HOLA to establish

the OTS[2] within the Department of the Treasury (see 12 USC § 1461 et seq.). HOLA authorized the OTS to prescribe regulations "to provide for the organization, incorporation, examination, operation, and regulation of . . . Federal savings associations" (12 USC § 1464 [a] [1]).

While national banks are explicitly authorized by regulations promulgated by the Office of the Comptroller of the Currency to issue gift cards (see 12 CFR 7.5002 [a] [3]), neither HOLA nor the OTS regulations promulgated under the authority of the OTS explicitly authorizes federal savings associations to issue gift cards. HOLA authorizes federal savings associations to raise funds through deposit accounts and to issue evidence of those accounts (see 12 USC § 1464 [b] [1] [A]; see also 12 CFR 557.10). Under the OTS regulations, federal savings associations are authorized to transfer deposit funds to third parties by any mechanism or device (see 12 CFR 545.17), and to participate with others to use electronic means to perform any function as part of an authorized activity (see 12 CFR 555.200). Interpreting these provisions, the OTS had concluded that its regulations permitted national thrifts such as MetaBank to issue gift cards with expiration dates and administrative fees (see SPGGC, LLC v Ayotte, 488 F3d 525, 535 [2007], cert denied 552 US 1185 [2008]). Under this interpretation, a gift card issued by a federal thrift institution is evidence of a consumer's deposit account, which may be transferred to third parties by electronic means (id. at 535 n 7). It is axiomatic that an agency's interpretation of its own regulations must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation (see Thomas Jefferson Univ. v Shalala, 512 US 504, 512 [1994]).

### Regulating Abandoned and Dormant Accounts

Pursuant to his statutory authority (see 12 USC §§ 1463, 1464), the Commissioner of the OTS promulgated regulations that unambiguously address preemption of state law. With respect to deposit-related activities, 12 CFR 557.11 provides:

"To further [the purposes of HOLA] without undue regulatory duplication and burden, OTS hereby oc-

---

2. The original 1933 Act vested plenary authority in the Federal Home Loan Bank Board (see Fidelity Fed. Sav. & Loan Assn v De la Cuesta, 458 US at 144). On July 21, 2011, the OTS ceased operations and was merged into the Office of the Comptroller of the Currency, as mandated by section 312 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub L 111-203, tit III, 124 US Stat 1376, enacting 12 USC § 5412). The OTS regulations, however, remain extant and enforceable by that office.

cupies the entire field of federal savings associa-
tions' deposit-related regulations. OTS intends to
give federal savings associations maximum flex-
ibility to exercise deposit-related powers according
to a uniform federal scheme of regulation. Federal
savings associations may exercise deposit-related
powers as authorized under federal law . . . without
regard to state laws purporting to regulate or
otherwise affect deposit activities, except to the
extent provided in § 557.13. State law includes any
statute, regulation, ruling, order, or judicial deci-
sion" (12 CFR 557.11 [b]).

12 CFR 557.12 further provides that the OTS regulations
preempt state laws that, inter alia, purport to impose require-
ments regarding abandoned and dormant accounts, disclosure
requirements, funds availability, and service charges and fees.
On the other hand, 12 CFR 557.13 (a) provides that the OTS
regulations have not preempted state contract law, commercial
law, tort law, or criminal law, to the extent that such law only
incidentally affects deposit-related activities or is otherwise con-
sistent with the purposes of 12 CFR 557.11.

### The Old Gift Card Program

Simon is a retail shopping mall developer and manager. In
2001 Simon contracted with Bank of America to issue gift cards.
Under this agreement, all proceeds from the sale of the gift
cards were remitted to Simon, which, in turn, paid a transac-
tion fee to Bank of America. The previous Simon gift card
program was the subject of *Goldman v Simon Prop. Group, Inc.*
(31 AD3d 382 [2006]) and *Lonner v Simon Prop. Group, Inc.* (31
AD3d 398 [2006]). In *Goldman*, the plaintiffs commenced a
class action challenging Simon's imposition of monthly dor-
mancy fees, and the allegedly improper manner in which its
fees were disclosed. The Supreme Court, finding that the issu-
ing bank was the real party in interest, dismissed the complaint
as preempted by the National Bank Act (12 USC § 21 *et seq.*).
This Court reversed and remitted the matter to the Supreme
Court, concluding that Simon and the Bank of America were
separate entities, and that nothing in the record conclusively
established that the Bank of America was the real party in inter-
est, especially where Simon sold and marketed the card and
charged and collected the disputed fees (*see Goldman v Simon
Prop. Group, Inc.*, 31 AD3d at 383). For the same reasons, this
Court in *Lonner* reversed another order that had dismissed, as

preempted, a complaint against Simon (*see Lonner v Simon Prop. Group, Inc.*, 31 AD3d at 398).

## The New Gift Card Program

In September 2005 Simon terminated its relationship with Bank of America, and formed a second gift card arrangement with the federally chartered savings association MetaBank to issue gift cards pursuant to the OTS regulations. Under the new program, all proceeds are remitted to and controlled by Meta-Bank, while Simon is paid a commission for each gift card sold. MetaBank is solely responsible for determining the terms and conditions of the agreement between MetaBank and the consumer, and MetaBank controls all fees associated with the card.

Accordingly, the new gift card program, which is at issue herein, is substantially different from the program we reviewed in *Goldman* and *Lonner*, rendering those cases inapposite. In those instances, control of the gift card program rested in the retailer, Simon. Here, the gift card program is controlled by Meta-Bank, a federally chartered savings institution governed by HOLA and the OTS regulations.[3]

## Discussion

The defendants are correct insofar as they contended before the Supreme Court that HOLA and the OTS regulations preempt any cause of action alleging a breach of contract premised on the Abandoned Property Law, since 12 CFR 557.12 expressly provides that the OTS regulations preempt state laws that purport to impose requirements regarding abandoned accounts. However, as a general principle, the plaintiff is correct that HOLA and the OTS regulations do not preempt state contract or consumer protection laws of general application (*see* General Business Law §§ 349, 350). Indeed, the OTS regulations explicitly recite that they have not preempted state contract law, commercial law, tort law, or criminal law, to the

---

**3.** Other courts have recognized this important distinction between a program that is controlled by a federally chartered financial institution, and a program that is controlled by a retailer that is neither a national bank nor a federal thrift (*compare SPGGC, LLC v Blumenthal*, 505 F3d 183, 191 [finding no preemption where the enforcement of Connecticut Gift Card Law against Simon did not interfere with national bank's ability to exercise its powers], *with SPGGC, LLC v Ayotte*, 488 F3d at 535-536 [finding preemption where New Hampshire Consumer Protection Act indirectly prohibited a national thrift from exercising its powers]).

extent that such state law only incidentally affects deposit-related activities (*see* 12 CFR 557.13 [a]).

> "The duty to refrain from deceptive and misleading conduct is imposed on all businesses. State laws of general application, which merely require all businesses, including [federal thrifts], to abide by contracts and refrain from making misrepresentations to customers, do not impair a [federal thrifts]'s ability to exercise its gift-card issuing powers. At most, they 'incidentally affect' the exercise of a [federal thrifts]'s powers" (*Mwantembe v TD Bank, N.A.*, 669 F Supp 2d 545, 553 [2009]; *accord Mann v TD Bank, N.A.*, 2009 WL 3818128, *5, 2009 US Dist LEXIS 106015, *13-14 [2009]; *Poskin v TD Banknorth, N.A.*, 687 F Supp 2d 530, 556-557 [2009]).

Thus, an action alleging simple breach of contract or deceptive business practices pursuant to General Business Law § 349 on the part of a thrift may be maintained, and the plaintiff's causes of action alleging or related to those theories of recovery are not preempted (*see* 12 CFR 557.13 [a]; *McAnaney v Astoria Fin. Corp.*, 665 F Supp 2d 132, 164-169 [2009]; *cf. SPGGC, LLC v Ayotte*, 488 F3d 525 [2007] [New Hampshire statute restricting the sale of gift cards that carry expiration dates or are subject to administrative fees preempted by HOLA and OTS regulations]).

Here, the Supreme Court granted that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (2) to dismiss the amended complaint, concluding that all causes of action were preempted. Yet the amended complaint not only included a cause of action alleging breach of contract premised on the Abandoned Property Law, but also causes of action to recover damages for breach of contract not premised on the Abandoned Property Law, breach of the covenant of good faith and fair dealing implied into the sales contract for the gift card, unjust enrichment, conversion, money had and received, and violation of General Business Law § 349, which are not preempted by federal law. Consequently, the Supreme Court should not have granted those branches of the defendants' motion which were pursuant to CPLR 3211 (a) (2) to dismiss the first, second, fourth, fifth, and sixth causes of action in the amended complaint, and so much of the third cause of action in the amended complaint as alleged breach of contract on grounds other than the Abandoned Property Law. Since the Supreme

Court directed the dismissal of the amended complaint solely on the ground that the action was preempted by HOLA and the OTS regulations, it did not reach those branches of the defendants' motion which were pursuant to CPLR 3211 (a) (1) and (7) to dismiss the first, second, fourth, fifth, and sixth causes of action, and so much of the third cause of action as was not premised on the Abandoned Property Law, respectively, or for summary judgment dismissing those causes of action (*see Llanos v Shell Oil Co.*, 55 AD3d 796 [2008]; *Goldman v Simon Prop. Group, Inc.*, 31 AD3d 382 [2006]). Those branches of the motion remain pending and undecided (*see Llanos v Shell Oil Co.*, 55 AD3d 796 [2008]; *Goldman v Simon Prop. Group, Inc.*, 31 AD3d 382 [2006]).

Accordingly, the order is modified, on the law, by deleting the provision thereof granting those branches of the defendants' motion which were pursuant to CPLR 3211 (a) (2) to dismiss, as preempted by federal law, the first, second, fourth, fifth, and sixth causes of action in the amended complaint, and so much of the third cause of action in the amended complaint as alleged breach of contract on grounds other than the Abandoned Property Law, and substituting therefor a provision denying those branches of the motion and, as so modified, the order is affirmed, and the matter is remitted to the Supreme Court, Nassau County, for a determination, on the merits, of those branches of the defendants' motion which were to dismiss those claims pursuant to CPLR 3211 (a) (1) and (7) or for summary judgment dismissing those claims.

ANGIOLILLO, J.P., DICKERSON and HALL, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof granting those branches of the defendants' motion which were pursuant to CPLR 3211 (a) (2) to dismiss, as preempted by federal law, the first, second, fourth, fifth, and sixth causes of action in the amended complaint, and so much of the third cause of action in the amended complaint as alleged breach of contract on grounds other than the Abandoned Property Law, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for a determination, on the merits, of those branches of the defendants' motion which were to dismiss those claims pursuant to 3211 (a) (1) and (7) or for summary judgment dismissing those claims.